UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D N Y

★ JUL 0 6 2011 ★

LONG ISLAND OFFICE

*SUMMONS ISSUED*

------------------------------------------------------------X

WILLIAM HASPER,

Plaintiff,

-against-

THE COUNTY OF SUFFOLK, POLICE COMMISSIONER
RICHARD DORMER, DEPUTY POLICE
COMMISSIONER ROGER SHANNON, CHIEF ROBERT
MOORE, and DEPUTY INSPECTOR THADDEUS
NIEVES, individually and in their official capacities,

Defendants.

------------------------------------------------------------X

**COMPLAINT**

Jury Trial Demanded

**CV 11 3227**

**SEYBERT, J**

**BOYLE M.**

Plaintiff, WILLIAM HASPER, through his attorneys, LEEDS MORELLI & BROWN,

P.C., alleges upon knowledge as to himself and his own actions, and upon information and belief

as to all other matters, as follows:

## JURISDICTION AND VENUE

1.      This is a civil action for compensatory and punitive damages, proximately resulting from

defendants' violations of Plaintiff's rights as guaranteed him by the First and Fourteenth

Amendments to the Constitution of the United States and is brought pursuant to 42

U.S.C. § 1983.  This action is also brought pursuant to Title VII of the Civil Rights Act of

1964, as codified, 42 U.S.C. § 2000e, et seq; and the New York State Executive Law,

Human Rights Law, § 290 et seq.

ORIGINAL

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

4.      All statutory prerequisites have been met.  Plaintiff filed a Charge of Discrimination with
        the EEOC and was issued a right to sue letter on May 9, 2011.

5.      Plaintiff has complied with the General Municipal Law § 50. Plaintiff filed a Notice of
        Claim on December 9, 2010 and appeared for a 50-h hearing on April 4, 2011.
        Defendants have neglected or refused to make adjustment or payment.

## PARTIES

6.      Plaintiff, William Hasper, ("Hasper "), was and still is a resident of Suffolk County, State
        of New York.

7.      Defendant, County of Suffolk ("County"), at all times hereinafter mentioned, was and still
        is a municipal corporation of the State of New York, with its principal place of business
        at 100 Veterans Memorial Highway, Hauppauge, New York.

8.      Upon information and belief, defendant Richard Dormer ("Dormer") is an individual
        employed by the Suffolk County Police Department ("SCPD"). Dormer is the current
        Police Commissioner of the SCPD.   Therefore, Dormer is responsible for SCPD's
        maintenance and operation, including, but not limited to, the hiring, firing, promotion and

2

discipline of employees and all other employment related issues. Additionally, Dormer is the final policymaker for the SCPD, charged with and responsible for properly training and supervising employees with respect to employment issues. Dormer works in Suffolk County. Dormer is sued in his official and individual capacities.

9.    Defendant Roger Shannon ("Shannon") is an individual employed by the SCPD. Shannon is the current Deputy Police Commissioner of the SCPD. Therefore, Shannon is responsible for SCPD's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Shannon is a policymaker for the SCPD, charged with and responsible for properly training and supervising employees with respect to employment issues. Shannon works in Suffolk County. Shannon is sued in his official and individual capacities.

10.    Defendant, Robert Moore ("Moore") is an individual employed by the SCPD. Moore is the current Chief of Department of the SCPD. Therefore, Moore is responsible for SCPD's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Moore is a policymaker for the SCPD, charged with and responsible for properly training and supervising employees with respect to employment issues. Moore works in Suffolk County. Moore is sued in his official and individual capacities.

3

11.   Defendant Thaddeus Nieves ("Nieves") is an individual employed by the SCPD. Nieves
      is the current Deputy Inspector of the SCPD. Therefore, Nieves is responsible for
      SCPD's maintenance and operation, including, but not limited to, the hiring, firing,
      promotion and discipline of employees and all other employment related issues.
      Additionally, Nieves is a policymaker for the SCPD, charged with and responsible for
      properly training and supervising employees with respect to employment issues. Nieves
      works in Suffolk County. Nieves is sued in his official and individual capacities.

                                        **FACTS**

12.   In December 1993, William F. Hasper ("Hasper"), a male, commenced employment with
      the SCPD as a Police Cadet.

13.   On May 20, 1994 Hasper graduated from the SCPD Academy and attained the rank of
      Patrol Officer.

14.   On July 28, 2000, Hasper was promoted to Sergeant.

15.   From approximately May 2003 until the middle of 2004, Hasper volunteered as the driver
      for Steve Levy ("Levy") during Levy's campaign for Suffolk County Executive. Hasper
      did so in his personal capacity, not as a Police Officer. In fact, Hasper received no
      compensation for his service to Levy and drove Levy while he was "off duty."

16.   On February 21, 2005, Hasper was promoted to Lieutenant.

17.   Throughout his years of service with SCPD, Hasper performed his duties in an exemplary manner.

18.   Hasper received commendations, including: (a) two excellent policy duty awards; (b) four headquarters commendations; and (c) highway patrol cop of the month.

19.   In July 2007, Hasper was designated the Commanding Officer of the Court Liaison Bureau in Central Islip, an assignment which is regarded as a favorable assignment because it provides opportunity for overtime, allows for a steady Monday through Friday daytime work schedule, allows for use of a take-home unmarked police car, and provides a clothing allowance.

20.   Police Officer Laurie Salerno ("Salerno") was assigned to the Court Liaison Bureau and was under Hasper's command.

21.   In September 2007, Hasper complained to Inspector Aristides Mojica ("Mojica"), that Salerno was making offensive sex-based comments, such as, "pretty soon [Lt. Kim McGreevey will] be blowin' her new boss" and "Captain John Blosser, now there's a man that couldn't lay there and enjoy a good blow job." Additionally, Salerno referred to several male police officers as "Club Viagara" and stated that one particular officer has "hairy gray balls." Moreover, after Hasper selected an officer to work in his command, Salerno said that he should have selected someone else because, "the girls need some fucking eye candy."

22.    Hasper did not receive a response to his complaint. Accordingly, on December 21, 2007, Hasper met with Moore and Mojica, to further discuss Salerno's sexually charged conduct. Moore told Hasper that neither he nor the Police Commissioner would take any action against Salerno.

23.    On April 18, 2008, Salerno filed a complaint of discrimination and sexual harassment against Hasper. The SCPD initiated an investigation into the allegations.

24.    As part of the investigation, Deputy Inspector Robert Brown ("Brown") asked Hasper to respond to Salerno's allegations.

25.    On July 21, 2008, Hasper submitted a written response to Brown's questions.

26.    Shortly after Hasper submitted his response, Brown threatened Hasper and demanded that Hasper remove from his report the names of high ranking police officials such as Chief Moore and Captain John Blosser.

27.    Brown also demanded that Hasper remove the name of Kim McGreevey.    Upon information and belief, McGreevey is a close friend of Brown. Hasper refused to remove the names.

28.    On September 18, 2008, Hasper was exonerated of all sexual harassment charges.

29.  In December 2009, another complaint of discrimination and sexual harassment was brought against Hasper by former Senior Clerk Typist Elizabeth Cosgrove. Upon information and belief, Moore initiated the complaint because Cosgrove wrote on her resignation letter "Harassment by Lieutenant Hasper."

30.  Upon information and belief, in February 2010, the Internal Affairs Bureau ("IAB") was ordered by Dormer to follow Hasper and did so for three weeks. The IAB claimed to witness Hasper visiting illegal massage parlors. However, Hasper visited a legal massage parlor to receive treatment for a line of duty injury. Upon information and belief, the IAB has never before been assigned to follow a commanding officer.

31.  As part of the investigation into Cosgrove's charges, on March 11, 2010, Hasper submitted a written response to Cosgrove's allegations.

32.  On March 10, 2010, Moore reassigned Hasper to the Office of the Chief of Department.

33.  In this assignment, Hasper had no subordinates, whereas in the Court Liaison Bureau, he had many subordinates. Additionally, in the Office of the Chief of Department, Hasper had no overtime opportunities, whereas in the Court Liaison Bureau, he had many overtime opportunities. Hasper also lost use of his department car and issuance of the uniform allowance. Other officers who had not complained of discrimination and/or participated in discrimination investigations did not receive such reassignments.

34.    On April 19, 2010, Moore reassigned Hasper to the 4th Precinct for one day.

35.    The following day, Hasper was reassigned to the 3rd Precinct as Administrative Officer. This position does not allow for overtime.  Other members outside of Hasper's protected classes did not receive such reassignments.

36.    On June 9, 2010, Hasper went to the Suffolk County District Attorney's ("DA") office to answer questions about the DA's investigation of Suffolk County Executive Levy.  As Levy's driver during the campaign, Hasper had come to know information about Levy.

37.    At the DA's office, Hasper answered truthfully answered questions in response to the Assistant District Attorneys' questions and spoke as a citizen on the following matters of public concern, among others:
    a.  Levy's personal relationships with various people;
    b.  various pieces of real property that Levy owns;
    c.  an allegation Hasper had heard that Levy borrowed $112,000 from the Housing and Urban Development Department that was supposed to be used for urban blight but was diverted to Levy's campaign fund;
    d.  businesses of Colleen West, Levy's wife; and
    e.  Levy taking cash donations from people while campaigning.

38.    On June 9, 2010, immediately following Hasper's meeting with the DA's office, without any basis in fact or law, Dormer ordered Hasper to report for a psychological evaluation.

Hasper immediately contacted his union representative who successfully fought the order. Other officers who were outside of Hasper's protected classes were not ordered to undergo psychological evaluations. In fact, SCPD members are rarely, if ever, ordered to undergo psychological evaluations.

39. In August 2010, Hasper was exonerated of all sexual harassment charges in connection with Cosgrove's allegations.

40. On September 13, 2010, Shannon served Hasper with seven charges of misconduct. Such charges were also distributed to the entire department. Other SCPD members outside of Hasper's protected classes were not issued such charges.

41. Moreover, another SCPD officer outside of Hasper's protected classes who allegedly tipped off organized crime groups about impending SCPD raids, which is a much more serious offense than that alleged against Hasper, only received one charge of misconduct, whereas Hasper received seven charges.

42. As of the date of this filing, the charges are still pending.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(FREE SPEECH RETALIATION)

43. Defendants, Dormer, Moore, Shannon, and Nieves, acting under color of state law, denied Plaintiff terms, conditions and privileges of employment based on his speaking as

9

a citizen on matters of public concern and answering questions truthfully in response to an investigation by the District Attorney's Office, in violation of the First and Fourteenth Amendments to the United State Constitution (as enforced by 42 U.S.C. § 1983), and all related provisions of the New York State Constitution.

44.     Defendant, County, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, (as enforced by 42 U.S.C. § 1983), and all related provisions of the New York State Constitution.   Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to free speech.  Such deliberate indifference may be inferred in the following ways:

   a.  Supervisors, such as Dormer, Moore, Shannon, and Nieves, failed to properly investigate and address allegations of constitutional violations.

   b.  Inadequate training/supervision was so likely to result in retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

   c.  Policymakers, such as Dormer, Moore, Shannon, and Nieves, engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

## SECOND CAUSE OF ACTION
(EQUAL PROTECTION)

45.     Defendants, Dormer, Moore, Shannon, and Nieves, acting under color of state law, denied Plaintiff equal protection under the law in the terms, conditions and privileges of employment based on his sex and/or gender, in violation of the Fourteenth Amendment to the United State Constitution (as enforced by 42 U.S.C. § 1983), and all related provisions of the New York State Constitution.

46.     Defendant, County, has while acting under color of state law, deprived Plaintiff of his constitutional rights to equal protection under the law, as secured by the Fourteenth Amendments to the United States Constitution, (as enforced by 42 U.S.C. § 1983), and all related provisions of the New York State Constitution.  Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.  Such deliberate indifference may be inferred in the following ways:

    a.  Supervisors, such as Dormer, Moore, Shannon, and Nieves, failed to properly investigate and address allegations of sex and/or gender discrimination.

    b.  Inadequate training/supervision was so likely to result in sex and/or gender discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

    c.  Policymakers, such as Dormer, Moore, Shannon, and Nieves, engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

**THIRD CAUSE OF ACTION**
TITLE VII and NEW YORK STATE HUMAN RIGHTS LAW

47. As described above, Defendant County, has taken adverse employment actions against Plaintiff (including bringing false charges against Plaintiff, transferring Plaintiff, ordering Plaintiff to a psychological evaluation, and causing Plaintiff to lose overtime and other benefits), which were motivated, in part, upon Plaintiff's gender/sex, as well as his opposition to discriminatory practices and participation in a sexual harassment investigation, in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e, et seq., and the New York State Executive Law § 296.

48. As more fully set forth above, the individual Defendants, aided, abetted, incited,

11

compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6).

WHEREFORE, Plaintiff demands judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, interest, injunctive relief, and any other damages permitted by law. Plaintiff also demands judgment against defendants for each cause action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. The plaintiff further seeks injunctive relief, including but not limited to, the clearing of his personnel file of any wrongful disciplinary actions, immediate reinstatement, and a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights. Plaintiff further demands all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.

Dated: Carle Place, New York
June 30, 2011

LEEDS MORELLI & BROWN, P.C.
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

_____
RICK OSTROVE

12