UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
WILLIAM HASPER,

                         Plaintiff,

          -against-                          MEMORANDUM & ORDER
                                             11-CV-3227(JS)(AKT)
THE COUNTY OF SUFFOLK, RICHARD
DORMER, ROGER SHANNON, ROBERT
MOORE, and THADDEUS NIEVES,

                         Defendants.
----------------------------------------x
APPEARANCES
For Plaintiff:      Steven A. Morelli, Esq.
                    Joshua S. Beldner, Esq.
                    Law Office of Steven A. Morelli, P.C.
                    1461 Franklin Avenue
                    Garden City, NY 11530

For Defendants:     Jason Bassett, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788


SEYBERT, District Judge:

          Pending before the Court is defendants Richard Dormer,

Roger Shannon, Robert Moore, Thaddeus Nieves (collectively, the

"Individual Defendants"), and Suffolk County's (the "County" and

together with the Individual Defendants, "Defendants") motion for

summary judgment.  (Docket Entry 40.)  For the following reasons,

Defendants' motion is GRANTED IN PART and DENIED IN PART.

Plaintiff William Hasper ("Plaintiff") is a retired Lieutenant of the Suffolk County Police Department ("SCPD"). (See Defs.' Br., Docket Entry 40-13 at 3.) In addition to his police work, Plaintiff was involved in Suffolk County politics. In 2003 and 2004, Plaintiff volunteered as a driver for Steve Levy's Suffolk County Executive campaign. (July 2012 Order at 2 (citing Am. Compl., Docket Entry 12, ¶ 15).) Plaintiff's volunteer work was unrelated to his official duties as a police officer and occurred during Plaintiff's off-duty hours. (July 2012 Order at 2 (citing Am. Compl. ¶ 15).)

In 2007, Plaintiff complained to his superior, Inspector Aristedes Mojica, about a police officer under Plaintiff's command named Laurie Salerno ("Salerno") who had made several inappropriate sexual comments. (July 2012 Order at 3.) Plaintiff claims that he complained to his superiors about Salerno's comments on at least three separate occasions--by phone, in writing, and in person. (Pl.'s Dep. Tr., Docket Entry 43-2, at 26:4-35:18.) Plaintiff's complaints received no immediate response, and

---

[1] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements ("56.1 Stmt.") and Counterstatement ("56.1 Counterstmt."). The parties' statements are minimal, however, and the Court has also drawn some facts from the Court's July 12, 2012 Memorandum and Order (the "July 2012 Order") to provide context. Although the July 2012 Order addressed the facts at the motion to dismiss stage, many of these facts are undisputed.

according to Plaintiff, Mojica and Police Chief Moore eventually told Plaintiff that Salerno would not be disciplined.  (July 2012 Order at 3; Am. Compl ¶ 22.)

In April 2008, Salerno filed a sexual harassment complaint against Plaintiff.  (Am. Compl. ¶ 23.)  On July 21, 2008, Plaintiff filed a written response to Salerno's sexual harassment complaint.  (Pl.'s 56.1 Counterstmt., Docket Entry 41-9, ¶ 2.)  Plaintiff maintains that his response contained the names of several high-ranking officials and that Inspector Brown, an SCPD Investigator, asked Plaintiff to change his report.  (Pl.'s 56.1 Counterstmt. ¶ 2; July 2012 Order at 3.)  Plaintiff refused to do so.  (Pl.'s 56.1 Counterstmt. ¶ 2.)  Ultimately, on September 18, 2008, the SCPD determined that Salerno's charges were unfounded and Plaintiff suffered no disciplinary consequences.  (Pl.'s 56.1 Counterstmt. ¶¶ 3-4.)

In December 2009, a former SCPD clerk named Elizabeth Cosgrove ("Cosgrove") retired and indicated in writing that she was leaving the SCPD because of Plaintiff's sexual harassment.  (Def.'s Br. at 4; Pl.'s 56.1 Counterstmt. ¶ 5.)  Plaintiff filed a written response to Cosgrove's allegations and the SCPD investigated and eventually determined that her complaint was unfounded.  (Pl.'s 56.1 Counterstmt. ¶¶ 9, 14.)

In early 2010, the SCPD Internal Affairs Bureau ("IAB") conducted surveillance of Plaintiff.  (Pl.'s 56.1 Counterstmt.

¶ 6.)  On one occasion, the IAB trailed Plaintiff to a message parlor in Massapequa, New York.  (Defs.' Br. at 5; Defs.' 56.1 Stmt. ¶ 7.)  Plaintiff maintains that he visited massage parlors to receive treatment for a line-of-duty injury.  (Pl.'s 56.1 Counterstmt ¶ 7.)

On March 10, 2010, Plaintiff was reassigned to the Office of the Chief of Department, where Plaintiff claims he had "no duties [and] no responsibilities." (Pl.'s 56.1 Counterstmt. ¶ 8.) Then, on April 19, 2010, Plaintiff was reassigned to the 4th Precinct.  (Pl.'s 56.1 Counterstmt. ¶ 10.)  The following day, Plaintiff was again reassigned, this time to the 3rd Precinct. (Pl.'s 56.1 Countersmt. ¶ 11.)

On June 9, 2010, Inspector Jan Rios told Plaintiff to report to the District Attorney's Office.  (Pl.'s 56.1 Counterstmt. ¶ 12.)  There, Assistant District Attorney Christopher McPartland questioned Plaintiff in connection with their investigation of Steve Levy, and Plaintiff provided "truthful answers" to questions regarding associates of Levy, property owned by Levy, Levy's involvement with a HUD loan, and Levy's acceptance of cash donations.  (Pl.'s 56.1 Counterstmt. ¶ 12.)  That same day, the SCPD ordered Plaintiff to attend a psychological evaluation.  (Pl.'s 56.1 Counterstmt. ¶ 13.)  However, the order to attend a psychological evaluation was later rescinded.  (Am Compl. ¶ 38.)

4

In September 2010, the SCPD served Plaintiff with departmental misconduct charges. (July 2012 Order at 4; Pl.'s 56.1 Counterstmt. ¶ 15.) The parties have described these charges against Plaintiff as follows: failing to properly supervise his staff at the Court Liaison Bureau; using his police vehicle to conduct personal business; leaving SCPD jurisdiction while on duty/without approval; failing to secure his firearm; and association with a known criminal. (Defs.' Br. at 6-7.)

Subsequently, on June 29, 2011, Salerno and Cosgrove filed a lawsuit in the Eastern District of New York against Plaintiff and the County alleging that Plaintiff sexually harassed them. (Pl.'s 56.1 Counterstmt. ¶ 16.) Plaintiff claims that the County has refused to defend him in the sexual harassment lawsuit. (See Second Am. Compl. ("SAC"), Docket Entry 17, ¶ 42(g).) Plaintiff retired on April 9, 2012 before the SCPD's misconduct charges could be adjudicated. (Defs.' Br. at 7.)

<u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on July 6, 2011 alleging causes of action for First and Fourteenth Amendment for retaliation and violations of Plaintiff's right to equal protection under 42 U.S.C. § 1983. (Compl. ¶¶ 43-46.) Plaintiff also claimed that he was subject to gender discrimination under Title VII and the New York Human Rights Law. (Compl. ¶¶ 47-48.) Defendants moved to dismiss the Complaint on July 12, 2012 and the Court granted and

denied the motion in part. (July 2012 Order at 13.) The Court also allowed Plaintiff to replead his allegations, (July 2012 Order at 13), and Plaintiff filed an Amended Complaint on February 3, 2012, (see Am. Compl., Docket Entry 12.) Defendants' now move for summary judgment and make the following four arguments: (1) Plaintiff failed to establish a prima facie First Amendment Retaliation claim, (2) Plaintiff failed to establish a prima facie gender discrimination claims, (3) Plaintiff failed to establish a prima facie retaliation claim based upon gender; (4) Plaintiff cannot maintain a claim for municipal liability, and (5) the Individual Defendants are entitled to qualified immunity in their individual capacities. (See Defs.' Br. at 8-20.)

DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

## I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a

6

genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v.

<u>Quintel Entm't, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001) (citing <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." <u>Morales</u>, 249 F.3d at 121 (citation omitted).

II. <u>First Amendment Retaliation</u>

Plaintiff brings his First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983. "Section 1983 provides a private right of action against any person who, under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999). Section 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" <u>Nasca v. Cnty. of Suffolk</u>, 933 F. Supp. 2d 437, 442 (E.D.N.Y. 2013) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).

Defendant claims that Plaintiff has failed to make out a prima facie First Amendment retaliation claim. (Defs.' Br. at 8.) To make out a prima facie case of First Amendment retaliation, a public employee must put forth evidence showing that: "'(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision.'" <u>Frisenda v. Inc. Vill. of Malverne</u>, 775 F. Supp. 2d 486, 503 (E.D.N.Y. 2011) (quoting <u>Skehan v. Vill. of Mamaroneck</u>, 465 F.3d 96, 106 (2d Cir. 2006), <u>overruled on other grounds by</u> <u>Appel v. Spiridon</u>, 531 F.3d 138, 140 (2d Cir. 2008)). Defendants may still escape liability, however, "'if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm . . . outweighs the value of the plaintiff's expression.'" <u>Id.</u> (quoting <u>Skehan</u>, 465 F.3d at 106).

Plaintiff claims he engaged in constitutionally protected speech by making statements to ADA McPartland in connection with the Levy investigation (<u>See</u> Pl.'s Opp. Br., Docket Entry 42, at 12.) Defendants do not dispute that Plaintiff's speech was constitutionally protected, but assert that Plaintiff failed to establish a claim for First Amendment retaliation because

(1) no adverse employment actions took place and (2) Plaintiff has not demonstrated that a causal connection exists between his statements to ADA MacParland and any adverse employment action. (Defs.' Br. at 9.)

A.    Adverse Employment Action

"'In the context of a First Amendment retaliation claim . . . retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" Frisenda, 775 F. Supp. 2d at 510 (ellipsis in original) (quoting Zelnick v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)). While courts have named discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand as some examples of adverse employment actions, "precedent [also] allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002); see also Frisenda, 775 F. Supp. 2d at 510.

Plaintiff argues that he suffered three adverse actions: (1) being ordered for a psychological evaluation; (2) being charged with misconduct; and (3) not being given representation in a lawsuit or being adequately informed of his rights or status in a litigation. (Pl.'s Opp. Br. at 12-13.) Defendants address only the first and second alleged adverse actions. Specifically,

Defendants argue that the psychological evaluation was not an adverse action because the order to attend an evaluation was rescinded and the issuance of misconduct charges was not an adverse action because the charges were not "false charges,"[2] and were not pursued once Plaintiff retired.  (Defs.' Br. at 9-10.)

The Court agrees that the initiation of disciplinary action, standing alone, does not rise to the level of an adverse employment action.  See Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 471 n.26 (S.D.N.Y. 2011) ("The initiation of disciplinary proceedings against an employee, by itself, may not constitute an adverse employment action under the traditional definition."); Honey v. Cnty. of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[T]hreats of disciplinary action . . . do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."). However, the initiation of disciplinary proceedings, coupled with other retaliatory conduct, can create an adverse action sufficient to support a constitutional violation.  See Phillips, 278 F.3d 103 at 109.

Here, the issuance of misconduct charges, standing alone, was not an adverse employment action because no adverse

---

[2] Because no evidence was submitted to support the veracity of all the misconduct charges brought against Plaintiff, factual issues preclude summary judgment.

consequences resulted from the charges--Plaintiff retired before the charges were adjudicated. In addition to asserting misconduct charges against Plaintiff, however, Defendants ordered Plaintiff to undergo a psychological evaluation on the same day he spoke to the District Attorney's office about Levy. Forcing employees to undergo a psychological evaluation has been held to constitute an adverse employment action. Syken v. New York, No. 02-CV-4673, 2003 WL 1787250, at *5 (S.D.N.Y. Apr. 2, 2003) (holding that forcing the plaintiff to undergo a psychiatric evaluation was a "material adverse employment action[]"); see also Ramsey v. N.Y. City Health & Hosps. Corp., No. 98-CV-1594, 2000 WL 713045, at *10 (S.D.N.Y. June 2, 2000); Fitzgerald v. City of Troy, No. 10-CV-0451, 2012 WL 5986547, at *13 (N.D.N.Y. Nov. 28, 2012). Although the order to attend a psychological evaluation was subsequently withdrawn, Defendants' order to attend the evaluation, coupled with the seven misconduct charges subsequently brought against Plaintiff raises a factual issue as to the existence of an adverse employment action. A reasonable jury could conclude that the sum of the SCPD's actions could have deterred a reasonable similarly situated individual from exercising his First Amendment rights.

Plaintiff also contends that the SCPD's failure to defend him in the sexual harassment suit brought by Cosgrave and Salerno was an adverse employment action. Since the parties' submissions do not cite to evidence sufficient to determine as a

matter of law whether the SCPD had a duty to defend Plaintiff, the Court cannot decide at this juncture whether the SCPD's refusal to do so was an adverse action. It is noteworthy, however, that the SCPD refused to furnish Plaintiff a defense in the suit, even though it investigated both Salerno and Cosgrove's sexual harassment allegations and found them to be unfounded. (Pl.'s 56.1 Counterstmt. ¶¶ 3-4, 9, 14.) Defendants' failure to defend Plaintiff cannot be deemed an adverse employment action without a legal determination that they were required to do so.

B. <u>Causal Connection</u>

Defendants maintain that, even if Plaintiff sustained an adverse employment action, he cannot show a causal connection between his speech (what they identify as Plaintiff's statements to ADA McPartland) and any such adverse action. The Court disagrees.

A "causal connection can be demonstrated by plaintiff 'indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'" <u>Frisenda</u>, 775 F. Supp. 2d at 511 (quoting <u>Cobb v. Pozzi</u>, 363 F.3d 89, 108 (2d Cir. 1999)). The plaintiff must come forward with some "tangible proof" in this regard, rather than his own "conclusory assertions of retaliatory motive." <u>Id.</u> However, "proof of causation may be shown indirectly by, <u>inter alia</u>, demonstrating that the protected activity was followed

closely by a retaliatory action." <u>Frisenda</u>, 775 F. Supp. 2d at 511.

Here, Plaintiff produced evidence that the order to undergo a psychological evaluation came on the same day, indeed, within hours, as Plaintiff's statements to ADA McPartland. (Pl.'s 56.1 Counterstmt. ¶ 13.) Although there is no bright-line rule as to what exact temporal proximately is sufficient to create an inference that a causal connection exists, a period of mere hours is sufficient. <u>See</u> <u>Caruso v. City of N.Y.</u>, 973 F. Supp. 2d 430, 453 (S.D.N.Y. 2013) (finding that "[a] period of seven days is undoubtedly short enough to give rise to an inference of causation" even when defendants may have been contemplating plaintiff's termination before his protected speech"). Defendants note that the disciplinary charges at issue were not brought against Plaintiff until seven months after the IAB investigation began. (Defs.' Br. at 10.) However, the charges came only three months after Plaintiff's protected speech. (Defs.' Br. at 10.)

Defendants also assert that Plaintiff has not put forth sufficient evidence showing the SCPD knew what Plaintiff said to ADA McPartland. (Defs.' Br. at 11.) There is evidence, however, that individuals in the SCPD knew Plaintiff was speaking to ADA McPartland. In fact, Inspector Rios informed Plaintiff that he was to report to the District Attorney's office "forthwith." (Pl.'s 56.1 Counterstmt. ¶ 12.) Moreover, upon his return from

the DA's office, Plaintiff spoke with Inspector Rios and received calls from Deputy Inspector Caldarelli and Chief Mango.[3] (Pl.'s Dep. Tr. at 111-12.) There is also evidence that at least some of the Individual Defendants had been Levy supporters. (See Dormer Dep. Tr., Docket Entry 41-4, at 6-7, 9-10; Shannon Dep. Tr., Docket Entry 43-3, at 9; Moore Dep. Tr., Docket Entry 43-7, at 11.) Thus, Plaintiff's involvement in the Levy investigation raises a question of fact as to the existence of a causal connection.

Defendants' motion for summary judgment with respect to Plaintiff's First Amendment retaliation claim is therefore DENIED.

III. Title VII Gender Discrimination

Defendant moves to dismiss Plaintiff's Title VII gender discrimination claims, arguing that Plaintiff has failed to set forth a prima facie case. Specifically, Defendants argue that "the record is devoid of any evidence that Plaintiff was treated differently from women making allegations of sexual harassment." (Defs.' Br. at 14.) The Court disagrees.

Title VII prohibits discrimination "against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts analyze employment discrimination claims brought under the

_____

[3] Notably, Michael Caldarelli testified during his deposition that it was "common knowledge" that Plaintiff had been involved in the Levy investigation, although he could not pinpoint when it became well known. (Caldarelli Dep. Tr., Docket Entry 41-6, at 30-31.)

burden shifting framework set forth in the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Under that framework, the Plaintiff must first establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." Ruiz v. County of Rockland, 609 F.3d 486, 492 (2d Cir. 2010). "The burden of establishing a prima facie . . . is minimal." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 378 (2d Cir. 2003). However, "[e]ven if the plaintiff succeeds in presenting a prima facie case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). "For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. Id. "Although the analytical framework is articulated, and applied, in terms of 'shifting' burdens, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Littlefield v. AutoTrader.com, 834 F. Supp. 2d 163, 168 (W.D.N.Y. 2011)

(quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)).

Defendant does not dispute that the first, second, and third elements of Plaintiff's prima facie case are satisfied, but asserts that there is insufficient evidence supporting the third element--"an inference of discrimination." (See Defs.' Br. at 13.) In the Second Circuit, a plaintiff may raise an inference of gender discrimination by showing that the employer treated him "less favorably than similarly situated [female] employees." Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 339 (S.D.N.Y. 2001); Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Here, Plaintiff alleges that he complained to his superiors at SCPD on at least three separate occasions--by phone, in writing, and in person--about Salerno's sexually charged statements. (Pl.'s Dep. Tr. 26:4-35:18). Yet Plaintiff's superiors took no action and did not investigate his complaints. Conversely, when Salerno and Cosgrove complained that Plaintiff sexually harassed them, the SCPD did investigate their claims.

The Court finds that Plaintiff has raised a genuine issue of material fact with respect to his allegation that he was treated less favorably than similarly situated female employees who complained they were being sexually harassed. In Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 560 (7th Cir. 1998), the Seventh Circuit rejected an argument that Walmart treated female employees

more favorably than male employees under their sexual harassment policy.  There, the plaintiffs argued that similarly situated female employees "often made crude comments with sexual connotations" but were never disciplined for their conduct.  Id. at 562.  The court held, however, that the plaintiffs' could not make out a prima facie disparate treatment claim because "there is no evidence that any of this [sexually charged] behavior sparked complaints of harassment. . . ."  Id. at 564.  Thus, absent sexual harassment complaints that reached management, Walmart was not required to investigate or take disciplinary action against them. Id.  When presented with a similar argument regarding disparate treatment, the court in Littlefield v. AutoTrader.com, 834 F. Supp. 2d 163, 169 (W.D.N.Y. 2011), relied in part upon Morrow and held that without "proof that defendant was presented with a complaint or was otherwise made aware of comparable conduct on the part of a female employee, and treated the female employee more favorably than it treated plaintiff, no reasonable jury could find that plaintiff was subjected to disparate treatment . . . ."  Id. at 170.

Here, Plaintiff complained to his superior about Salerno's sexually charged behavior on at least three occasions but his superiors ignored his complaints and refused to take any action.  Conversely, after Salerno and Cosgrove claimed that they were sexually harassed by Plaintiff, their allegations were

investigated.  Defendants argue that Plaintiff, Salerno, and Cosgrove are not similarly situated because Salerno and Cosgrove both filed formal complaints alleging that they were sexually harassed with the SCPD's sexual harassment officer, but Plaintiff did not.  (Pl.'s Opp. Br. at 14.)  In fact, only Salerno filed a formal sexual harassment complaint.  Cosgrove wrote in her retirement papers that she was leaving the police force because of Plaintiff's sexual harassment and her papers were forwarded to the sexual harassment office before being investigated.  (July 2012 Order at 4; Pl.'s 56.1 Countersmt. ¶ 5; Defs.' Br. at 14.)  Unlike the facts in Littlefield and Morrow, Plaintiff complained to his superiors multiple times about Salerno's sexually charged conduct and the SCPD did nothing.  Although it is unclear from the record whether Plaintiff ever used the term "sexual harassment" when discussing Salerno's conduct with Inspector Mojica and Chief Moore, the fact that he complained about Plaintiff's inappropriate behavior on numerous occasions raises a factual question as to whether Defendants acted with a discriminatory intent. See Collins v. Cohen Pontani Lieberman & Pavane, No. 04-CV-8983, 2008 WL 2971668, at *10 (S.D.N.Y. July 31, 2008) (the failure to investigate a sex discrimination complaint was evidence supporting an inference of discrimination).

Defendants' motion for summary judgment with respect to Plaintiffs' discrimination claim is therefore DENIED.

VI. <u>Title VII Retaliation</u>

Defendants argue that Plaintiff cannot make out a Title VII retaliation claim because Plaintiff was transferred from his post at the Police Liaison Bureau as a direct result of IAB's determination--following an investigation--that he engaged in misconduct. (Defs.' Br. at 15.) Defendants therefore claim the IAB's finding that Plaintiff engaged in misconduct was a legitimate nondiscriminatory reason for his reassignment. (Defs. Br. at 16.)

Title VII prohibits an employer from retaliating against an employee because she has engaged in protected activity, namely, "oppos[ing] any practice made an unlawful employment practice [under Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "Under the first step of the <u>McDonnell Douglas</u> framework, the plaintiff must establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." <u>Zann Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citation omitted). Then, "if the plaintiff succeeds in presenting a prima facie case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the

employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If the defendant can articulate a "non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture." Zann Kwan, 737 F.3d 834, at 844. "The plaintiff must then come forward with non-retaliatory reason is a mere pretext for retaliation." Id.

Plaintiff claims he engaged in two protected activities: (1) complaining to his superiors about Salerno's offensive conduct and (2) submitting a response to Salerno's allegations that he sexually harassed her. (Pl.'s Opp. Br. at 20.) As a consequence, Plaintiff claims that he was subjected to five separate adverse employment actions. Specifically, Plaintiff claims he was: (1) transferred to new positions within the SCPD, (2) investigated by the IAB, (3) issued disciplinary charges, (4) ordered to undergo a psychological evaluation, and (5) was refused a defense in a sexual harassment lawsuit brought against him. (Pl.'s Opp. Br. at 21.)

Defendants assert that the IAB's determination that he engaged in misconduct was a legitimate nondiscriminatory reason for Plaintiff's transfer to a different department. (Defs.' Br. at 16.) The Court agrees. It is undisputed that Plaintiff visited a message parlor when he should have been at work and his conduct was uncovered by the IAB. Absent evidence that the SCPD's reason

for transferring plaintiff was pretextual, it was permissible to transfer Plaintiff as a result of his misconduct.

Plaintiff counters that Defendants claimed reason for the transfer was a pretext. Specifically, Plaintiff points to deposition testimony which purportedly demonstrates Plaintiff was transferred out of the Court Liaison Bureau because he engaged in protected activities--namely complaining about Salerno's conduct and responding to her sexual harassment allegations. (Pl.'s Opp. at 21.) Plaintiff specifically points to the following evidence: (1) the fact that Plaintiff was directed to remove the names of high ranking officials in the department from his response to Salerno's sexual harassment allegation; and (2) evidence that Shannon told Plaintiff "you have a good career going for you in the police department, don't sidetrack it or ruin it because of Salerno."[4] (Pl.'s Opp. Br. at 21.) The Court finds that Plaintiff's evidence does not sufficiently support a causal link between Plaintiff's transfer from the Court Liaison Bureau and the

---

[4] Plaintiff also makes the argument there is contradictory testimony concerning Defendants' reasons for transferring Plaintiff from the Court Liaison Bureau. (Pl.'s Opp. Br. at 22.) Plaintiff asserts that Deputy Commissioner Shannon's testimony that he transferred Plaintiff because of his attendance problems is contradicted by Inspector Mojica's testimony. (Pl.'s Opp. Br. at 22.) But upon a careful review of Shannon's deposition transcript, which Plaintiff failed to cite, it is clear Shannon testified that he transferred Plaintiff out of the Court Liaison Bureau specifically because of the IAB's findings. (See Shannon Dep. Tr., Docket Entry 41-3, at 62:6-20.)

protected activity that forms the basis of his retaliation claim. Plaintiff's transfer from the Court Liaison Bureau occurred in March 2010, whereas Plaintiffs protected activities--complaining about Salerno's conduct and responding to her sexual harassment complaint--occurred 2007 and 2008. Given the gap of almost two years between the last instance of protected conduct and Plaintiff's transfer, Plaintiff has not demonstrated a sufficient causal connection. See Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 229 (E.D.N.Y. 2014) ("Plaintiff must be able to show that the retaliatory actions 'closely followed,' the protected activity or that there was a 'reasonably close temporal proximity' between the two." (quoting Summa v. Hofstra Univ., 708 F.3d 115, 127 (2d Cir. 2013)) Since, Plaintiff has not come forward with sufficient evidence showing that Defendants' reason for Plaintiff's transfer was merely a pretext, the Court holds that Plaintiff may not rely upon his transfer out of the Police Liaison Bureau as a basis for his sex-based retaliation claim.

Nevertheless, Defendants did not address whether a causal connection exists between Plaintiff's protected activities and the other alleged adverse employment actions--(1) being investigated by the IAB, (2) the issuance of disciplinary charges, (3) being ordered to undergo a psychological evaluation, and (4) the SCPD's refusal to defend him in a sexual harassment lawsuit.

The Court therefore DENIES the balance of Plaintiff's motion for summary judgment with respect to Plaintiff's retaliation claim.

VII. <u>Municipal Liability</u>

Although "[l]ocal government bodies, . . . are considered 'persons' within the meaning of § 1983, [ ] they cannot be held liable under this statute solely because of the discriminatory actions of one of their employees." <u>Augustin v. Enlarged City Sch. Dist. of Newburgh</u>, 616 F. Supp. 2d 422, 444-45 (S.D.N.Y. 2009) (internal citations omitted).  In other words, a municipality cannot be held liable under the theory of <u>respondeat superior</u>.  Rather, liability under § 1983 can only attach to the municipality when it maintains a "policy or custom" and "inflicts [an] injury." <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). However, "municipal liability may be imposed for a single decision by municipal policymakers . . . . where the decisionmaker possesses final authority to establish municipal policy with respect to the action." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 470, 481, 106 S. Ct. 1292, 1299, 89 L. Ed. 2d 452 (1986).

Plaintiff maintains that Police Commissioner Shannon and Deputy Police Commissioner Dormer were personally involved in the decision to impose the following adverse employment actions on Plaintiff: (1) transferring Plaintiff; (2) making the decision to investigate Plaintiff; (3) ordering him to attend psychological

examination; and (4) issuing disciplinary charges against him. (Pl.'s Opp. Br. at 24.)  Defendants do not dispute that Shannon and Dormer were personally involved in these decisions and do not dispute that they were "policymakers" under Monell.  (Defs.' Br. at 17-18.); see Johns v. Town of E. Hampton, 942 F. Supp. 99, 106 (E.D.N.Y. 1996) (explaining that a police chief and police commissioner were "policymakers" under the framework of Monell).

Therefore, Defendants' motion for summary judgment with respect to Defendants' municipal liability argument is DENIED.

## IV. Qualified Immunity

Defendants argue that the Individual Defendants named in this suit must be dismissed under the doctrine of qualified immunity.  (Defs.' Br. at 20.)  It is undisputed that Title VII claims cannot be brought against individual defendants.  See Feingold v. New York, 366 F.3d 138, n.20 (2d Cir. 2004). Moreover, Plaintiff's First Amendment retaliation claim is the only constitutional violation specifically addressed in Defendants' motion.  Therefore, the Court will only rule on Defendants' qualified immunity argument as it applies to Plaintiff's First Amendment retaliation claim.  "Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that

his conduct did not violate plaintiff's rights." <u>Mandell v. Cnty. of Suffolk</u>, 316 F.3d 368, 385 (2d Cir. 2003). The relevant inquiry is "whether the defendants should have known that the specific actions complained of violated the plaintiff's [constitutional rights]." <u>Lewis v. Cowen</u>, 165 F.3d 154, 167 (2d Cir. 1999). However, when the "specific intent of a defendant is an element of plaintiff's claim under clearly established law, and plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate." <u>Mandell</u>, 316 F.3d at 385. Here, retaliatory intent is an element of Plaintiff's claim and the Court has ruled that a triable issue of facts exists with respect to Defendants' intent. Therefore, Plaintiff's First Amendment retaliation claim cannot be dismissed against the Individual Defendants based upon qualified immunity.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for summary judgment at Docket Entry 40 is GRANTED IN PART and DENIED in part.  Defendants' motion is GRANTED only in so far as the Court agrees that Plaintiff has not shown a causal connection between his transfer from the Court Liaison Bureau and Plaintiff's protected conduct for purposes of his Title VII retaliation claim.  Defendants' motion for summary judgment is otherwise DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    February  25 , 2015
          Central Islip, New York